ADELBERT BOWDEN, Respondent, v. THE LEHIGH VALLEY RAILROAD COMPANY, Appellant.

Fourth Department, May 9, 1917.

**Railroad — negligence — injury to motorcyclist at grade crossing — evidence not justifying recovery — contributory negligence.**

Action to recover damage for personal injuries sustained by the plaintiff who, while riding a motorcycle across a railroad crossing, was struck by the defendant's train. The plaintiff had previously ridden over this crossing and was familiar with the locality; he did not reduce the speed of his machine which was moving approximately ten miles an hour until he was within eight or ten feet of the track upon which the train, a fast express, was approaching and at a time when it was only from fifty to seventy-five feet away. There was a great preponderance of evidence to the effect that the train gave warning by bell and whistle as it approached the crossing. On all the evidence, *held*, that a judgment for the plaintiff should be reversed in that no negligence upon the part of the railroad company was established and because the plaintiff was guilty of contributory negligence as a matter of law, and that the defendant's motion for a direction of a verdict should have been granted.

APPEAL by the defendant, The Lehigh Valley Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 20th day of July, 1916, upon the verdict of a jury for $10,150, and also from an order entered in said clerk's office on the 22d day of June, 1916, denying defendant's motion for a new trial made upon the minutes.

*Hubbell, Taylor, Goodwin & Moser* [*Clarence P. Moser* of counsel], for the appellant.

*Bentley & MacFarlane* [*William MacFarlane* of counsel], for the respondent.

FOOTE, J.:

Plaintiff has recovered a verdict for personal injuries sustained in a collision between the motorcycle on which he was riding and one of defendant's fast trains at a highway crossing in the town of Mendon, Monroe county, on May 28, 1914.

Upon this appeal we are asked to hold that there was no proof of defendant's negligence or of plaintiff's freedom from contributory negligence sufficient to warrant the submission of those questions to the jury, and that defendant's motion for a direction of a verdict in its favor at the close of all the evidence should have been granted. I think defendant's contention is correct and that, as matter of law, defendant was entitled to a direction of a verdict in its favor.

On a former trial the jury rendered a verdict in favor of defendant. This verdict was set aside by the trial court on plaintiff's motion because of the misconduct of one of the jurors in visiting and inspecting the scene of the accident during the trial. That order we affirmed. (173 App. Div. 918.) Some additional witnesses were produced on the last trial and the case is, I think, stronger in favor of defendant.

There is no substantial dispute as to the facts. The accident happened just after sunset and while it was still daylight. Plaintiff was thirty-eight years of age and weighed $267\frac{1}{2}$ pounds. He was riding a twin-cylinder Pope, seven or eight horse-power motorcycle weighing 230 to 240 pounds. He had been accustomed to ride motorcycles since 1905.

On the afternoon of the day of the accident he had ridden his motorcycle from the city of Rochester to Clifton Springs, passing over this crossing. He left Clifton Springs to return about seven o'clock and arrived at the crossing about an hour later. During the last 450 feet or more before he reached the crossing, he was traveling at a speed of eight to ten miles per hour according to his testimony, as indicated by his speedometer, and at the rate of about twelve miles per hour

according to the opinion of persons who were on the highway. The road is an improved State road. Defendant's tracks at the crossing are about three feet above the general level of the road on either side. The highway crosses the tracks substantially at right angles. Plaintiff approached the crossing from the south and the train which struck him was running east on the most southerly of the two tracks. Plaintiff did not reduce the speed of his motorcycle until he was within eight or ten feet of the south or nearest rail of the south track. On the contrary he applied more power so as to maintain the same speed on the ascending grade at the crossing. He then discovered the approach of the train, threw out the clutch and put on his brakes and attempted to and did stop, but not until the front wheel of his motorcycle was on the south rail, where he was struck. The train was one of defendant's fast mail and express trains, running on about its schedule and at the rate of fifty miles an hour.

There is a hamlet of about 300 inhabitants at and near this crossing, not incorporated as a village, and defendant maintains crossing gates and a signal bell, but neither the gates nor the bell are operated except between seven A. M. and six P. M. Plaintiff had been over this crossing on two or three previous occasions and was familiar with it to that extent. It does not appear whether he was aware that the gates were not operated after six P. M., but there is a notice to that effect upon a signboard at the crossing and he does not claim to have been misled by the open gates.

From the crossing in each direction defendant's tracks curve toward the south for about 320 feet east of the crossing, and about 943 feet west of the crossing, on about a two-degree curve. Buildings, trees and shrubbery obstructed plaintiff's view toward the west more or less for about 400 feet before he reached the crossing. He had, however, a partial view toward the west between the last two houses nearest to the railroad, where apparently by careful observation he could have seen the train. The distance between these houses was twenty-four feet. An outhouse and trees and a church shed obstructed the view between these houses to some extent, sufficient perhaps to excuse his failure to see the train even if he looked, as he says he did, because of the rate of speed

at which he was traveling. The last house on the west side of the road was thirty-eight feet from the south track. After passing this house the view toward the west is unobstructed. At forty-two feet from the first track the head of an engine coming from the west can be seen at a distance of 412 feet from the crossing, and this view widened rapidly as plaintiff proceeded toward the crossing until at the crossing it could be seen at a distance of 915 feet away. On the opposite side toward the east the last house stands 100 feet south of the tracks. Some trees and shrubbery obstruct the view more or less, but thirty feet from the first rail all obstructions have been passed and there is a clear view to the east along the tracks for 2,000 feet.

Plaintiff claims to have looked toward the west at three different points as he approached the crossing. The first point was about three hundred feet from the crossing, where he says he looked between two buildings but could see nothing because of the obstructions. The next point was about one hundred feet south of the first track. This is the point between the last two houses where the view is obstructed as stated. He saw nothing there. He continued on at the same rate of speed until he came to the northeast corner of the last house, which is thirty-eight feet from the track, when he glanced to the west and saw nothing though the engine and part of the train must then have been in sight. He then looked to the east and continued looking to the east until, as he says, he got to a point where he had passed the shrubbery and all obstructions, when he again glanced to the west and saw the engine bearing down upon him only fifty to seventy-five feet away. He was then about ten feet from the first track and too near to stop at the speed he was traveling. He says at that rate he could stop his motorcycle in about fourteen feet.

At about 450 feet from the crossing are four corners made by the crossing of another highway. At this point a number of boys had been playing ball and were making some noise. Just as he passed these boys the engine sounded a whistle, giving the usual signal — two long and two short blasts.

There is another highway crossing of the railroad about 915 feet westerly from the crossing where plaintiff was injured,

and the whistling posts for each of these crossings are located each about 1,500 feet west of each crossing. Thus the engine signals for these two crossings of a train moving at the rate of 50 miles per hour are given near together.

Thirty-one persons were sworn as witnesses upon the question of the signals given by this engine. All but two of these witnesses were within 475 feet or less of this crossing, except thirteen who were on the train.

Seven of them were witnesses for the plaintiff. Five of these heard the whistle for the crossing. One, a girl fifteen years of age who was between the two houses nearest to the crossing on the west side, did not hear the whistle but did hear the noise of the train. The other does not remember whether he heard it or not. Three of plaintiff's witnesses did not hear the engine bell. Two do not know whether it was rung or not and two do not remember.

Twenty-four witnesses were called by defendant. Ten of these were employees of the company and fourteen were not. Nine of the fourteen who were not employees heard the engine whistle for both crossings, and five for one crossing. Six employees who were on the train heard the whistle for both crossings. Three employees not on the train heard the whistle for both crossings and one employee not on the train heard the whistle for one crossing.

Of the nine who were not employees and who heard the whistle for both crossings, three were United States government mail clerks on the train and four were United States Express Company's clerks and messengers on the train. Three of the mail clerks heard the engine bell ring as they opened the car door just at the time of the accident. Two of the express company's clerks do not know whether the bell was rung or not, and two were not questioned on that subject. One of defendant's witnesses, not an employee of the company, did not hear the bell. Two do not know whether the bell was rung or not, and four were not questioned on that subject. Five employees heard the bell, one only, the engineer, being on the train. Two employees on the train heard the bell as the train came to a stop, but not before. One, the fireman on the train, did not notice whether the bell was ringing or

not. One brakeman on the train could not hear whether the bell was ringing, and one, the conductor on the train, was not questioned on that subject.

Of all these thirty-one witnesses near the scene of the accident, twenty-nine heard the engine signal its approach to this crossing by its whistle, while only one, besides the plaintiff, a fifteen-year-old girl standing between the houses, failed to hear it, and one does not remember whether he heard it or not. Ten of the thirty-one witnesses heard the bell, and none of the others testified that it was not ringing. Three testified that they did not hear it, and the others who were asked either say that they do not know or do not remember.

It is not claimed that any conditions exist at this crossing requiring other signals than by bell or whistle different from the conditions which exist at most railroad crossings in the country. It is much traveled for a country road and gates are maintained during the day time, but not so far as appears because adequate signals cannot be given by the engineer.

We thus have the question whether defendant can be held negligent for failing to give adequate warning when the warning which it did give was heard by twenty-nine persons who happened to be in the vicinity of the crossing, none of them so placed as to be better able to hear than plaintiff, unless it be those who were on the train and two employees of the company who were somewhat nearer to the train than was he.

The duty of the engineer was to give such warning as would be heard by persons who were listening attentively. That he did give such a warning is clearly demonstrated by the evidence which is undisputed, for his signals were heard by at least sixteen persons in the vicinity of this crossing, no one of whom was intending to go over the crossing and so under the duty which rested upon plaintiff to be attentive and vigilant. Nearly all of these twenty-nine persons, except perhaps those who were on the train, were in no better position to hear the signals than was plaintiff. They were no nearer to the engine when the signals were given than plaintiff, except two of them. Thus defendant has clearly demonstrated that plaintiff's failure to hear the signals was not because they were not loud enough to be heard, and, therefore, entirely adequate as signals. If plaintiff did not hear them, as he says, his failure

to hear can only be explained on the theory that his hearing was defective or that the noise of his motorcycle prevented. There was some noise and shouting by the boys who had been playing ball at about the time the whistle was blown for one of the crossings, but this did not prevent all the witnesses who were in the immediate vicinity of these boys and the boys themselves from hearing the whistle. The railroad company was not required to anticipate that the plaintiff would not hear signals because he was riding upon a noisy machine or because his hearing was defective. Adequate signals are such as can be heard by persons who are listening attentively, whose hearing is unimpaired and who are not themselves making so much noise as to prevent hearing the signals which are customarily given at railroad crossings. No traveler on the highway expects to hear any other signals at the ordinary country crossing than those given by whistle or by bell or by both. He knows, or should know, that if the noise of his vehicle will prevent his hearing these customary signals then he will be without warning and should govern himself accordingly. Railroad companies are not required by law to anticipate that a traveler so situated that he cannot hear the customary signals because of the noise of the machine he is riding will proceed onto a crossing without taking such other precautions as an ordinarily prudent man would deem necessary for his safety.

I am of the opinion that no negligence of the railroad company was established. I am also of opinion that plaintiff failed to prove the absence of negligence upon his part, and that he was not entitled to have that question submitted to the jury.

Plaintiff's claim is that he looked to the west at three different places before his last look which proved to be too late. His counsel contends that his failure to discover this train at either time was because of the obstruction of buildings, trees and shrubbery. Plaintiff, therefore, knew at the time he arrived at the point about forty feet from the track where he could first get an unobstructed view to the west along the north side of the last house that he had had no clear view up to that point. At that point the train was in sight but he did not see it. He says he *glanced* to the west. Either this

glance was an inattentive one or it was taken before the house had ceased to be an obstruction to his view. At any rate it was only a glance. He then turned to look to the east long enough to satisfy himself that no train was coming from that direction, and when he again turned his eyes toward the west he was only ten feet from the track, and the engine only fifty to seventy-five feet away. During all of this time his motorcycle was running at a speed of eight to ten miles per hour, with more power applied as he came to the upgrade to keep up that rate of speed, and according to his own claim, it was a rate of speed so great as not to give him sufficient time to look effectively in both directions before it was too late. Down to the time he gave the glance to the west near the corner of the house he had received no information as to whether a train was coming from that direction. I think he was negligent as matter of law because he failed to reduce the speed of his machine sufficiently to give him time to get a clear view of the track to the west before it was too late. All thoughtful persons will agree that one who drives his horses onto a railroad crossing at a gait of eight to ten miles per hour and applies the whip to keep them up to that gait where he has not been able to see whether a train is coming from either direction until he is within ten feet of the track is not only negligent but reckless and foolhardy, if that rate of speed does not permit of a fair view in both directions in time for him to stop if necessary. While ten miles per hour may be a moderate speed for a motor vehicle, still it is true, as plaintiff's counsel asserts, that it put plaintiff within ten feet of the rail while he was looking to the east for only about two seconds and before he could get a fair view to the west. There may, of course, be conditions and circumstances surrounding a railroad crossing that will excuse such a rate of speed, as there may be circumstances and conditions requiring more adequate signals or other precautions by the railroad company, but there were none here.

I think defendant's motion for a direction of a verdict should have been granted. As was said by Judge MARTIN in *McDonald* v. *Metropolitan St. R. Co.* (167 N. Y. 66): " So long as a question of fact exists, it is for the jury and not for the court. If the evidence is insufficient, or if that which

has been introduced is conclusively answered, so that as a matter of law no question of credibility or issue of fact remains, then the question being one of law, it is the duty of the court to determine it."

It follows that the judgment and order appealed from should be reversed and judgment directed in favor of defendant dismissing the plaintiff's complaint, with costs.

All concurred.

Judgment and order reversed and judgment directed in favor of the defendant dismissing the complaint, with costs.